(76 App. Div. 132.)

SIBLEY v. SIBLEY.

(Supreme Court, Appellate Division, First Department.   November 21, 1902.)

1. DUE PROCESS OF LAW—PREVENTING DEFENSE—CONTEMPT.

Under Const. U. S. Amend. 14, forbidding the taking of property without due process of law, defendant in a suit for separation and separate support may not have his answer stricken out, and be prevented from presenting a defense, for contempt.

Appeal from special term, New York county.

Action by Carlie W. Sibley against Richard C. Sibley. From a judgment decreeing that plaintiff and defendant, who are husband

and wife, be separated from bed and board, awarding custody of their children to plaintiff, and awarding her a certain sum per year, defendant appeals. Reversed.

See 73 N. Y. Supp. 244, 1147.

The complaint alleges cruel and inhuman treatment on the part of the defendant toward the plaintiff, and that his treatment of her has been such as to render it unsafe and dangerous for her to cohabit with him. The answer admits the marriage and the issue of the marriage, but puts in issue the other material allegations of the complaint, and alleges abandonment of the defendant by the plaintiff without cause. On the 26th day of September, 1900, an order was made at special term adjudging the defendant in contempt for failure to pay alimony and counsel fees pursuant to a prior order duly made and served on him; and, as punishment for such contempt, it was thereby further ordered that the defendant's answer, and each and every allegation thereof, should be stricken out. The defendant appealed from each of these orders, but the appeals were dismissed on account of his failure to serve the printed papers. In June, 1901, the defendant moved at special term for an order modifying or vacating these orders, upon the ground of his inability to pay the alimony and counsel fees, which he claimed to have omitted to disclose previously through pride, and setting forth that he had a cause of action against his wife for absolute divorce, which was not known to him at the time the orders were granted. It appeared in opposition to this motion that he had fled the jurisdiction of the court for the purpose of evading compliance with these orders. The motion was denied, and on appeal to this court the order was affirmed on the ground that he should first submit himself to the jurisdiction of the court. Sibley v. Sibley, 66 App. Div. 552, 73 N. Y. Supp. 244. The action was then brought to trial. The defendant appeared by counsel, who was permitted to fully cross-examine the plaintiff and her witnesses; but he was confined strictly to a cross-examination, and was not permitted to show anything affirmatively in favor of the defendant. To this ruling, he excepted. When the plaintiff rested his case, the defendant's counsel moved for a dismissal of the complaint on the ground that the evidence was insufficient to establish her cause of action. This motion was denied, and an exception taken. The defendant's counsel thereupon insisted that the order striking out his cause of action was a nullity, that it was not due process of law, and that he had the right, under the federal constitution, to interpose his defense; and with a view to rebutting the evidence presented on behalf of the plaintiff, and to prove his client's defense, he thereupon called witnesses, but the court sustained the objection interposed by plaintiff's counsel to their being sworn, and the defendant excepted. Exceptions were duly filed by the defendant to the decision of the court.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

L. Laflin Kellogg, for appellant.
J. Noble Hayes, for respondent.

LAUGHLIN, J. It is doubtful whether the evidence is sufficient to sustain the judgment. The parties were married on the 11th day of February, 1886, and lived together until the 1st day of November, 1898; but, according to the plaintiff's testimony, they ceased to cohabit after the spring of 1895. The only evidence concerning the conduct of the defendant toward the plaintiff subsequent to the 19th day of February, 1896, is the uncorroborated testimony of the plaintiff herself. Her testimony with reference to the period prior to that time shows different acts of cruelty and violence of an aggravated character on the part of the defendant toward her; and as to many of the incidents, but not as to any assault, she was corroborated by

a nurse who was employed by them during the months of September and October, 1888, and by her lady's maid, who was in her employ from March, 1894, until February 19, 1896. It appears, however, that she never left the defendant on any of these occasions;. that she soon forgave his conduct, and in the main they lived happily together. Great affection was manifested by each for the other in their correspondence throughout their married life. The final quarrel occurred while they were living at Garden City. It arose over a charge which she made that he had misappropriated some of her money. She says that on that occasion "he became so violent that he grabbed me by the throat, and used such language that I told him that I would never live with him again under the same roof"; but it appears from her own testimony that she lived with him for two weeks thereafter, and then returned to New York and took up her residence with her mother, and he returned to New York and took an apartment at a hotel. From this time—November 1, 1898—until the commencement of the action in May, 1900, while they have not lived together as man and wife, their relations have been otherwise most friendly and intimate. He has frequently visited her and the children, and on occasions has sent her flowers, which she gracefully accepted, and cordially acknowledged by letter. She has accepted his invitation to visit him and the children when they were with him, stopping at the same hotels and occupying apartments near his. She has called to see him at his hotel in this city, with no apparent object except a friendly visit, and on one occasion, not finding him there, ordered and charged her lunch to him; leaving a pleasant,. affectionate note for him regarding it. The record fails to show that anything has occurred during this time to alter the plaintiff's regard and friendship for the defendant. It is incredible that she would have corresponded with and visited the defendant as she did, and permitted him to call upon and correspond with her, if she then had any intention of bringing this suit. In brief, if it be possible to waive and condone offenses of cruel and inhuman conduct without actual cohabitation, the evidence would seem to require that inference in this case. It is, however, unnecessary to decide this question at the present time, for a new trial must be ordered on another ground, and additional evidence may be introduced of such a character as to materially change the aspect of the case in this regard.

The judgment deprives the appellant of property and of contract property rights, and his exceptions fairly present the question as to whether his property has been taken without due process of law, within the meaning of the fourteenth amendment to the federal constitution. The defendant did not institute the action, and he did not ask that it be tried. The plaintiff forced it to trial against his will,. and a judgment resulted which deprived him of property without his having been heard in defense of his rights. This the supreme court of the United States has quite recently unanimously decided may not be done. Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215. Prior to that decision, it had been declared by numerous adjudications in this jurisdiction that in an equity suit the answer of a defendant who has been adjudged guilty of contempt in failing

to obey the mandate of the court might be stricken out. Walker v. Walker, 82 N. Y. 262; Brisbane v. Brisbane, 34 Hun, 339; Quigley v. Quigley, 45 Hun, 24; Gray v. Gray, 84 Hun, 347, 32 N. Y. Supp. 355; Knott v. Knott, 6 App. Div. 590, 39 N. Y. Supp. 804. In the exhaustive opinion delivered by Mr. Justice White in Hovey v. Elliott, supra, the decision of our court of appeals in Walker v. Walker is considered, and, in effect, overruled. The doctrine of the cases in our court to which reference has been made is not reconcilable with the decision of the supreme court in Hovey v. Elliott. There is no room for distinction, and, it being a federal question, it is our duty to follow the supreme court. Duncomb v. Railroad Co., 84 N. Y. 190; Hintermister v. Bank, 64 N. Y. 212. The reason upon which the rule expounded by the supreme court is based would seem only to forbid striking out a party's pleading on account of his contempt, and then refusing to recognize his right to be heard, and permitting the adverse party to proceed virtually ex parte, and obtain some relief, by judgment or otherwise, affecting his property or property rights. It manifestly does not apply to cases where the party in contempt is the moving party, and is praying for some relief at the hands of the court in which he is in contempt. In those cases the court of equity may refuse to hear him until he purges himself of the contempt. Such are the cases of Brinkley v. Brinkley, 47 N. Y. 40, 49, and Gross v. Clark, 87 N. Y. 272, the former of which is referred to with approval in Hovey v. Elliott; and the rule is also thus stated in Hovey v. Elliott, 145 N. Y. 126, 138, 39 N. E. 841, 39 L. R. A. 449.

The orderly administration of justice required that the learned trial judge acquiesce, as he did, in the decision of the special term—that being a court of co-ordinate jurisdiction—in striking out the answer. He very properly left the validity of that order to the determination of the appellate court. It follows, therefore, that, upon the trial of the action thus brought on by the plaintiff, the order of the special term in striking out the answer should have been treated as a nullity, and the exclusion of the defendant's evidence was erroneous.

The judgment must therefore be reversed, and a new trial granted, but without costs. All concur.