JOHNSTON et al. v. MUTUAL RESERVE FUND LIFE INS. CO.
(11 cases).

(City Court of New York, Trial Term. January, 1904.)

1. JUDGMENT—ACTION ON—JURISDICTION—EVIDENCE.

Where the answer in an action on the judgment of a court of general jurisdiction impugns the jurisdiction of the court which rendered the judgment, and defendant introduces evidence of the revocation of the authority of the person on whom service of process was made, plaintiff may prove facts outside the record, not required to be part of the judgment roll, to show that such court did have jurisdiction.

2. TRIAL—ORDER OF PROOF—DISCRETION.

The order in which proof may be introduced is in the sound discretion of the court.

3. FOREIGN CORPORATIONS—ACTION AGAINST—JURISDICTION—DOING BUSINESS IN STATE.

A foreign insurance company, though it has ceased to solicit new business, is still doing business in the state, so that jurisdiction may be acquired by service on an agent, where it still has outstanding policies in the state, on which it collects dues, and, in case of losses thereunder, adjusts them and makes remittances.

4. SAME—SERVICE OF PROCESS—CONSTRUCTION OF STATUTES.

Laws N. C. 1899, p. 175, c. 54, § 62, providing that no foreign insurance company shall be authorized to do business in the state till it shall constitute and appoint the Insurance Commissioner its attorney to receive process in any actions against it, intends that process shall be served on the Insurance Commissioner in actions on policies previously issued, when the law provided for such service on the Secretary of State.

5. SAME—IMPAIRING OBLIGATION OF CONTRACTS—CHANGING REMEDY.

Laws N. C. 1899, p. 175, c. 54, § 62, by substituting the Insurance Commissioner in place of the Secretary of State as the person to be served with process in actions against foreign insurance companies, merely changes the remedy, and so does not impair the obligation of contracts, as respects policies previously issued.

6. SAME—APPOINTMENT OF INSURANCE COMMISSIONER TO RECEIVE PROCESS—REVOCATION.

Laws N. C. 1899, p. 175, c. 54, § 62, provides that no foreign insurance company may do business in the state till it shall constitute and appoint the Insurance Commissioner its attorney to receive process in any actions against it, by an instrument stipulating that this authority shall continue in force so long as any liability of the company shall remain outstanding in the state. *Held*, that an insurance company, having made such appointment, could not revoke it, at least as to policies on which it had received premiums, after it had made the appointment.

7. SAME.

Act N. C. June 1, 1899 (Laws 1899, p. 197, c. 62), prohibiting every insurance company from transacting business in the state unless it became a corporation of the state, did not affect the prior policies of a

foreign company, or revoke the authority of the Insurance Commissioner to accept process in an action thereon against the company.

8. FOREIGN JUDGMENTS—ACTIONS ON—FEDERAL QUESTION.
   The question, in an action on a judgment of a court of another state, whether the foreign court obtained jurisdiction to render the judgment, is a federal question, so that a decision thereon of the Supreme Court of the United States, rather than one of a state court, must be followed.

Eleven actions by Henry P. C. Johnston and others against the Mutual Reserve Fund Life Insurance Company. Judgment for plaintiffs.

Addison G. Ricaud and Gilbert E. Roe, for plaintiffs.
George Burnham, Jr., and Frank R. Lawrence, for defendant.

SEABURY, J.   By a stipulation entered into between counsel, 11 actions, involving substantially the same question of fact and law, were heard at the same time before the court without a jury.   These actions are brought by assignees of judgments which were recovered against the defendant in the state of North Carolina.   The defendant is a corporation organized under the laws of the state of New York. The original actions, commenced in North Carolina, were to recover damages for alleged breach of contracts of insurance entered between citizens of that state and the defendant.   All of these actions resulted in judgments against the defendant, the validity of which was sustained by the Supreme Court of North Carolina.   Biggs v. Mut. Res. Fund Life Ass'n, 128 N. C. 5, 37 S. E. 955; Moore v. Mut. Res. Fund Life Ass'n, 129 N. C. 31, 39 S. E. 637.   The judgments now sued upon were recovered in the superior court of North Carolina, which is a court of superior and general jurisdiction.   The ground upon which these actions are defended is that the court of North Carolina in which these judgments were recovered did not have jurisdiction of the person of the defendant.   Proper copies of the judgment records being produced, and the court in which they were recovered being one of general jurisdiction, the law presumes that it had jurisdiction of the person of the defendant, unless something to indicate the contrary appears.   Voorhees v. Bank of U. S., 10 Pet. 449, 9 L. Ed. 490; Harvey v. Tyler, 2 Wall. 328, 342, 17 L. Ed. 871; Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959; Bosworth v. Vanderwalker, 53 N. Y. 597; Ferguson v. Crawford, 86 N. Y. 609; Applegate v. Lexington, etc., Mining Co., 117 U. S. 255, 6 Sup. Ct. 742, 29 L. Ed. 892.   In Bosworth v. Vanderwalker, supra, Folger, J., said:

"The intendment of law, however, is that a superior court of general powers had jurisdiction, until the contrary appears.   And this intendment is of jurisdiction of the subject-matter, not only, but of the person of the defendant, also.   *   *   *   The record of the judgment is prima facie evidence, and will be held conclusive until clearly and explicitly disproved."

The answer of the defendant impugned the jurisdiction of the North Carolina court, and the defendant subsequently proved its alleged revocation of the authority of the person upon whom service of process was made.   Under these circumstances, it is perfectly clear that no injury was done to the defendant by permitting the

plaintiff to go outside of the record, and to offer evidence tending to sustain the recitals therein contained. The jurisdiction of the North Carolina court was the fact to be proved, and, in view of the assault which the defendant made upon it, all evidence tending to prove the plaintiff's contention that the court had jurisdiction was competent. The facts proven outside of the record were not by law a requisite part of the judgment roll, but this fact did not make them incompetent as evidence. Thus Judge Folger, in Bosworth v. Vanderwalker, supra, said:

"There was no error in receiving in evidence papers as to the appointment of a guardian. The sole objection to them was that they formed no part of the record. * * * That they were not by law a requisite part of the judgment roll did not make them incompetent as evidence."

The defendant's objection relates to the order of proof, rather than to the competency of the evidence received. This was a matter within the discretion of the trial court, and the defendant was in no way prejudiced by taking the proof when it was offered, rather than at a later stage of the trial.

In order to acquire jurisdiction over a foreign corporation for the purpose of obtaining a personal judgment against it, it is necessary that the corporation be doing business within the state at the time service is made, and that service of process within the state shall be upon an agent of the corporation duly authorized to accept service. In the case of Conn. Mut. Life Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569, the court stated the rule in the following language:

"In a suit in a state court against a foreign corporation, where no property of the corporation is within the state, and the judgment sought is a personal one, it is material to ascertain whether the corporation is doing business within the state; and, if so, the service of process must be upon some agent in the state so far representing it that he may properly be held, in law, its agent to receive such service in its behalf."

Before deciding the question as to whether the North Carolina court had jurisdiction of the person of the defendant, it becomes necessary, therefore, to determine the following questions: (1) Was the defendant doing business within the state of North Carolina at the time service was made? And (2) was the service of process made within the state upon an agent of the defendant duly authorized to accept service?

1. Service in all the cases involved in all the actions now before the court was made after the 13th day of April, 1899, on the Insurance Commissioner of North Carolina. On or about the 18th day of May, 1899, the defendant withdrew all of its agents through which it had theretofore done business from the state of North Carolina. But the evidence established that, notwithstanding this withdrawal, the defendant nevertheless transacted business after this date in that state. A review of the evidence upon this point will, I think, establish this fact beyond question. Policies remained in force after the date of the alleged withdrawal, and premiums and assessments upon these policies were paid by persons living in North Carolina by remitting the premiums to the home office of the defendant, in New

York City. Where losses occurred, the defendant remitted the amount of the loss, as adjusted, to the person entitled to receive it in the state of North Carolina. An agent of the defendant, after the date of the alleged withdrawal, went into the state of North Carolina with authority to adjust a particular loss, and actually adjusted it. In one instance the defendant instructed a bank in the state of North Carolina to receive premiums due on a policy, and to deliver a check in payment of the amount of the policy. On another occasion it authorized a member of the bar of that state, as its attorney, to adjust a disputed claim, which duty said attorney duly performed. Upon still another occasion the proof shows that the defendant issued a new policy to a policy holder residing in the state upon the surrender of the old policy. The surrender of the old and the issue of the new policy were effected by mail. While it is true that the plaintiff has proved only isolated instances showing the acts enumerated above, it can hardly be doubted that all of these instances establish the fact that the defendant was doing business in the state of North Carolina at the time service was made upon the Insurance Commissioner. In Mut. Res., etc., Ass'n v. Phelps, 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987, which was a case in many respects similar to the cases now at the bar, the Insurance Commissioner of the state of Kentucky on October 10, 1899, canceled the license of this defendant to do business in the state of Kentucky. In that case, in determining what constituted "doing business within the state," the court said:

"It was stipulated between the parties that the outstanding policies existing between the association and citizens of Kentucky were continued in force after the action of the Insurance Commissioner, on October 10, 1899, and that on said policies the association had collected and was collecting dues, premiums, and assessments. It was therefore doing business within the state. Mut. Life Ins. Co. v. Spratley, 172 U. S. 602 [19 Sup. Ct. 308, 43 L. Ed. 569]."

2. In determining whether service of process within the state of North Carolina was made upon an agent duly authorized to accept service, it is necessary to review the legislation of that state in reference to insurance corporations doing business within the limits of its sovereignty, and to ascertain the relations existing between this defendant and the state of North Carolina and those citizens of that state who held policies issued by the defendant. The policies upon which the judgments now in suit were recovered were issued between the 14th day of December, 1882, and the 10th day of September, 1892. As early as 1876 (Laws 1876–77, p. 303, c. 157) the Legislature of North Carolina enacted a law prohibiting any foreign insurance company from issuing policies, taking risks, or transacting business in that state until it should appoint an agent residing in that state, who should act as such until a successor should be duly appointed, upon whom any civil process might be served. The law further provided that services upon such agent should be binding, and be personal service upon the company appointing him, and for the filing of a certificate of such appointment with the Secretary of the State. The certificate of appointment was required to—

"Contain a stipulation that in case of the death, absence or removal from the state of such agent, the company shall forthwith appoint another in his stead,

and, failing to do so, the Secretary of the State shall make such appointment, notifying the company thereof; and if such company withdraw from, or cease to do business in, the state, service upon such agent shall, nevertheless, be binding and be deemed a personal service upon such company, so long as any liability remains outstanding against the company in this state."

In 1883 (Pub. Laws 1883, p. 98, c. 57) the Secretary of State was authorized to issue licenses to do insurance business, provided that before the issue of any license the applicant therefor should appoint a general agent, who shall be a citizen and resident of the state, and file a certificate of such appointment, which certificate should—.

"Contain a stipulation agreeing that so long as there may be any liability on the part of the applicant under any contract entered into in pursuance of any law concerning insurance, any legal process affecting the applicant may be served in his absence upon such general agent, or upon the Secretary of State, and when so served, shall have the same effect as if served personally on such applicant in this state: provided, when such service is made upon the Secretary of State it shall be his duty to transmit at once a copy of the process to the home office of the company."

In 1899 it was enacted that:

"No foreign insurance company shall be admitted, and authorized to do business until * * * it shall constitute and appoint the Insurance Commissioner, or his successor, its true and lawful attorney, upon whom all lawful process in any actions or legal proceedings against it may be served, and therein shall agree that any lawful process against it which may be served upon its said attorney shall be of the same force and validity as if served on the company, and the authority thereof shall continue in force, irrevocable, so long as any liability of the company remains outstanding in this commonwealth." Laws 1899, p. 175, c. 54, § 62.

These are the only laws of the state of North Carolina to which it is necessary to refer at this time. The defendant complied with the requirements of these statutes up to the time of its formal withdrawal from the state. All of the policies upon which the judgments now in suit were recovered were issued while the law permitting service to be made on the Secretary of State was in force. On or about the 13th day of April, 1899, pursuant to the act of 1899, the defendant duly executed written authority to James R. Young, the Insurance Commissioner, or his successor in office, constituting him its true and lawful attorney—

"Upon whom all lawful process in any action or legal proceeding against it may be served, subject to and in accordance with the provisions of the laws of the state of North Carolina now in force, and such other laws, as may hereafter be executed in relation thereto; and said company does hereby expressly agree that any lawful process against it which may be served upon said James R. Young, insurance commissioner, or his successor, shall be of same force and validity as if served on this company, and this authority shall continue in force and irrevocable so long as any liability of said company remains outstanding in said state."

In the actions which resulted in the judgments which are the subject of these actions, service was made upon the Insurance Commissioner designated in this written authority. The defendant now contends that the designation of the Insurance Commissioner under the act of 1899 appointing him as the person upon whom service could be made in actions brought upon policies issued after his appointment

gave him no authority to receive service in actions brought upon policies issued prior to his appointment. It contends that his appointment had no reference to the past. It is true that, prior to the passage of this law, other persons were designated under the act of 1876 and the act of 1883 as the persons upon whom process should be served; but that fact is no indication that the state could not prescribe that another official should be designated for this purpose, or that the corporation itself could not designate other agents, provided that it did not violate the law in so doing. The agent designated under the act of 1876 was to act in that capacity "until a successor be duly appointed." Under the act of 1883, service was to be made upon the general agent or upon the Secretary of State. The enactment of these provisions did not mean that the state thereby surrendered the right to devolve this duty upon another official. The obvious purpose of the whole legislation to which reference has been made was to enable its citizens having claims against foreign corporations doing business in that state to litigate those claims in courts of the state where the contracts were made, so that they should not be put to the annoyance and expense incident to being obliged to pursue the corporation to the state of its origin, and attempt to enforce their claims in the courts of that state. As was said by Mr. Justice Brewer in the Phelps Case, supra, such statutes "indicate the purpose of the state that foreign corporations engaging in business within its limits shall submit the controversies growing out of that business to its courts, and not compel a citizen having such a controversy to seek, for the purpose of enforcing his claim, the state in which the corporation has its home." The act of the Legislature requiring that a different official should be designated as the person upon whom process could be served did not alter or diminish in an respect the rights of the insurance company. To hold that the Legislature intended that, after the act of 1899, those having causes of actions against such companies should serve process only upon those upon whom process could have been served at the time the contract was made, if the cause of action had arisen at that time, is to place a construction upon this legislation which is, in my judgment, wholly unreasonable and in direct violation of legal authority. The law substituting the Insurance Commissioner in the place of the Secretary of State as the person upon whom service should be made did not in any way affect the rights of the defendant, or the policy holders who had contracted with it. It merely prescribed a different remedy or means whereby the same rights which grew out of the contract could be enforced. Nor was the result of the change a remedy substantially different from that which previously existed. In designating the Insurance Commissioner, rather than the Secretary of State, as the person upon whom process was to be served, the change was merely as to the remedy. Nor is there any doubt as to the right of the state to alter or prescribe new remedies by which existing rights may be enforced, provided that contract obligations are not impaired. In Railroad Co. v. Hecht, 95 U. S. 168, 24 L. Ed. 423, it was held that a statute which prescribed a mode of serving process upon railroad

companies' different from that provided for in a charter previously granted to a particular company does not impair the obligations of a contract between said company and the state. Chief Justice Waite said:

"The regulation of the forms of administering justice of the courts is an incident of sovereignty. * * * The provision is one which evidently belongs to remedies against the corporation, and not to the grant of rights. As to remedies, it has always been held that the legislative power of change may be exercised when it does not affect injuriously rights which have been secured."

If further authority is needed, it is to be found in the luminous statement of the law upon this subject in Oshkosh Waterworks Co. v. Oshkosh, 187 U. S. 437, 23 Sup. Ct. 234, 47 L. Ed. 249, where Mr. Justice Harlan said:

"It is well settled that while, in a general sense, the laws in force at the time a contract is made enter into its obligations, parties have no vested right in the particular remedies or modes of procedure then existing. It is true, the Legislature may not withdraw all remedies, and thus, in effect, destroy the contract; nor may it impose such new restrictions or conditions as would materially delay or embarrass the enforcement of rights under the contract. According to the usual course of justice, as established where the contract was made, neither could be done without impairing the obligations of the contract. But it is equally well settled that the Legislature may modify or change existing remedies, or prescribe new modes of procedure, without impairing the obligations of contracts, provided a substantial or efficacious remedy remains or is given, by means of which a party can enforce his rights under the contract."

Judge Cooley, in his Const. Lim. (6th Ed.) p. 347, says that:

"Laws changing remedies for the enforcement of legal contracts, or abolishing one remedy where two or more existed, may be perfectly valid, even though the new or remaining remedy be less convenient than that which was abolished, or less prompt and speedy."

See, also, Swan v. Mut. Res. Fund Life Ass'n, 155 N. Y. 9, 49 N. E. 258.

In ascertaining whether the Legislature of North Carolina by the act of 1899 intended that all process should be served upon the Insurance Commissioner, without regard to the time when the contract of insurance was entered into, the decisions of the courts of that state should certainly be accorded great weight. Thus Mr. Justice Brewer, in the Phelps Case, says:

"Such decision of the highest court of Kentucky, construing one of its own statutes, if not controlling upon this court, is very persuasive, and it certainly is controlling unless it be held to be merely an interpretation of a contract created by the statute."

And in Hunt v. Hunt, 72 N. Y. 217, 28 Am. Rep. 129, Judge Folger says:

"The decisions of the tribunals of a state as to the true construction of the laws of their own sovereignty are binding upon the federal courts, * * * and why not on the judiciary of other states in all matters within the jurisdiction of the tribunals first named?"

The courts of North Carolina, as has already been pointed out, have held that service upon the Insurance Commissioner in the cases

which resulted in the judgments now before the court was valid.
On May 17, 1899, five weeks after it had duly executed its written
authority designating the Insurance Commissioner as the person
upon whom service could be made, the defendant, by resolutions of
its directors, declared the appointment of the Insurance Commis-
sioner as its attorney revoked, and subsequently filed these resolu-
tions in the Insurance Department of North Carolina.   The defend-
ant now insists that this attempted revocation of the authority of the
Insurance Commissioner terminated his authority to receive service
of process in actions subsequently brought.   To sustain this conten-
tion, it invokes the principle that a power of attorney, even though
by its terms irrevocable, is, if not coupled with an interest, revocable
at the will of the principal.   This principle is elementary, and its
soundness undisputed.   The question to be determined is as to the
application of this principle to this case.   The written authority desig-
nating the Insurance Commissioner, which the defendant made pur-
suant to the act of 1899, was, in my judgment, more than a mere
naked power of attorney.   The people of the state of North Carolina
had the right to exclude foreign corporations from the state alto-
gether, if they saw fit so to do, or to prescribe the terms and condi-
tions upon which such corporation should be permitted to transact
business in that state.   In Anglo-Am. Prov. Co. v. Davis Prov. Co.,
169 N. Y. 506, 510, 62 N. E. 587, 88 Am. St. Rep. 608, Judge Gray
said:

"As to the power of the state to prescribe, arbitrarily or from policy, lim-
itations and conditions upon the exercise by foreign corporations of corporate
rights, I suppose there to be no doubt, whether they be upon the right to
do business here, or upon the right to sue in our courts."

The cases showing the right of the state to grant or refuse permis-
sion to a foreign corporation of this kind to do business within its
limits are collected and discussed in Hooper v. California, 155 U. S.
648, 652, 15 Sup. Ct. 207, 39 L. Ed. 297.   In that case Mr. Justice
White said:

"The principle that the right of a foreign corporation to engage in busi-
ness within a state other than that of its creation depends solely upon the
will of such other state has been long settled, and many phases of its ap-
plication have been illustrated by the decisions of this court."

The act of 1883 providing that service should be made upon the
Secretary of State was repealed, and the act of 1899 designated the
Insurance Commissioner for this purpose.   This act also prescribed,
as a condition to be complied with before any insurance company
should be admitted to do business in that state, that it should execute
an instrument constituting and appointing the Insurance Commis-
sioner, or his successor, its true and lawful attorney, upon whom all
process in any action or legal proceeding against it might be served,
which instrument stipulated that this power should continue so long
as any liability of the company remained outstanding in that state.
Could the defendant, after having gained admission to the state, or
permission to continue to do business in that state, because it signi-
fied its consent to these conditions, and while its liabilities to citizens

of that state were still outstanding, revoke and repudiate the consent it had solemnly given as the condition of its right to exist in that state? I think not. The substitution of the Insurance Commissioner in the place of the Secretary of State in no way changed or altered the contract rights existing between the defendant and its policy holders. The contracts were the same, although the person upon whom service was to be made of process in the event of a cause of action arising by reason of a breach of these contracts was different. The designation of the Insurance Commissioner was more than a mere power of attorney. It was the performance of a condition prescribed by the state, upon which alone the defendant was permitted to exist in that state. Having complied with this condition, entered the state, and received the benefits resulting from the transaction of business with its citizens, it cannot now be heard to repudiate its own agent and revoke his authority. In the Phelps Case, supra, which arose under the statutes of Kentucky, the Supreme Court of the United States held that the service of a summons upon the Insurance Commissioner in an action against an insurance company doing business in the state was sufficient to bring the company into court, even when its license had been canceled by the commissioner, where, after such cancellation, it continued to collect premiums and assessments on policies remaining in force. See, also, Ins. Co. v. Gillette, 54 Md. 219; Germania Ins. Co. v. Ashby (Ky.) 65 S. W. 611. During the brief period that the defendant continued to do business in the state after it executed the authority to the Insurance Commissioner, the holders of the policies which were subsequently reduced to judgments, which are now in suit, paid premiums and assessments to the defendant. They knew that the act of 1883 designating the Secretary of State had been repealed, and that the Insurance Commissioner had been designated as the person upon whom service should be made. The authority of the Insurance Commissioner had been duly executed by the defendant and filed in the office of that official. Knowing these facts, which the law presumes they did, they paid premiums upon these policies, which the defendant received. These premiums may fairly be said to have been parted with upon the faith of the law of 1899 and the act of the defendant which was done pursuant thereto. Even if it could be held that prior to the payment of these premiums the policy holders had no interest in the act of 1899, or in the designation of an attorney under it, I think that they thereby acquired such an interest as to prevent the defendant, as to them, at least, from canceling and revoking the authority of the Insurance Commissioner. In the last analysis, the argument of the defendant will be found to rest, so far as legal authority is concerned, upon the case of Woodward v. Mut. Res. Fund Life Co., 84 App. Div. 324, 82 N. Y. Supp. 908. That was a case very similar to, but, I think, still distinguishable from, the cases now before the court. In that case, as in these cases, the jurisdiction of the North Carolina court depended upon service made upon the Insurance Commissioner. It was there held that as the policy of insurance which resulted in the judgment sued upon in that case had been issued before the power of

attorney given to the Insurance Commissioner was executed, and as the plaintiff in that case had parted with nothing upon the faith of the act of 1899, and had acquired no interest in the power of attorney, his rights were not affected by the revocation of such power. The Woodward Case is, however, in my judgment, clearly distinguishable from the cases at bar in several important respects. That case was determined upon an agreed statement of facts submitted pursuant to section 1279 of the Code of Civil Procedure. The facts agreed upon in that case differ from the facts proven in these cases, in that in the Woodward Case it was agreed that the company had not "done or transacted any business in said state" since the 17th day of May, 1899, when the company declared that it withdrew from the state. Although this point is not commented upon in the opinion in that case, it may well have been considered by the court. In the cases now before the court, premiums and assessments were paid to the company during the life of the power of attorney to the Insurance Commissioner, while in the Woodward Case there was no proof of such payments. Indeed, the decision in the Woodward Case seems to be based upon the absence of evidence of this character. In that case the court said:

"There is no evidence that the plaintiff parted with anything because of the existence of this power of attorney, or that he had in any way acquired any valuable interest in its maintenance."

It was because of the absence of this evidence that the court held the power to be revocable by the company. While I am satisfied that the Woodward Case is fairly distinguishable from the case at bar, it is nevertheless equally clear that that decision is in conflict with the decision of the United States Supreme Court in the Phelps Case. The Phelps Case was decided after the argument and decision in the Woodward Case, and was not called to the attention of the court. Even if the Woodward Case was not distinguishable from the cases now before the court, the obvious conflict between that decision and the decision in the Phelps Case makes it the duty of this court, in view of the federal question involved, to follow the rule laid down in the Phelps Case. This duty is nowhere more clearly pointed out than in Sibley v. Sibley, 76 App. Div. 132, 78 N. Y. Supp. 743, where the Appellate Division of this department, after pointing out the conflict between a decision of our Court of Appeals and a decision of the United States Supreme Court, says:

"There is no room for distinction, and, it being a federal question, it is our duty to follow the Supreme Court of the United States. Duncomb v. N. Y., H. & N. R. R., 84 N. Y. 190; Hintermister v. First Nat. Bank, 64 N. Y. 212."

The basis of these actions now before the court is a provision of the federal Constitution that full faith and credit shall be given in each state to the judicial proceedings of every other state. Const. U. S. art. 4, § 1. If the North Carolina court obtained jurisdiction of the person of the defendant, its judgment could be enforced here, and property taken under the judgments recovered in this state would not be taken without due process of law. As was said by the court in

Mut. Life Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569:

"The federal question with which we are now concerned is whether the court obtained jurisdiction to render judgment in the case against the company, so that to enforce it would not be taking the property of the company without due process of law."

Under the decision in the Phelps Case, I think it clear that the defendant had no right to revoke the appointment of the Insurance Commissioner, and, that being so, it follows that the courts of North Carolina acquired jurisdiction of the person of the defendant, and the judgments entered in that state established the debts of the defendant.

One other objection to the defendant remains for consideration. The defendant insists that, even if it had not revoked the authority of the Insurance Commissioner, that authority was revoked absolutely by the state of North Carolina, as an effect of the Craig act. The so-called "Graig Act" went into effect June 1, 1899 (chapter 62, p. 197, Laws 1899). It prohibited every insurance company from transacting business in that state, under certain penalties therein prescribed, unless it should first become a domestic corporation of the state of North Carolina. The wisdom or lack of wisdom shown by this legislation is not a matter for consideration by the courts of this state. The Craig act related to the future, prescribing certain conditions upon which foreign insurance corporations would be permitted to do business in that state. The act had no reference to liabilities which resulted from business transacted in the past. It offered to such foreign corporations permission to do business in the state, which they were perfectly free to accept or reject as they saw fit. It certainly was not intended by this act to relieve such corporations from the liabilities which they had already incurred to citizens of that state. It was entirely within the power of the state of North Carolina to prescribe such terms, if it saw fit to do so. The courts of this state have no right to arrogate to themselves the function of determining as to the wisdom or justice of legislation enacted in another state. Even the courts of the state where such legislation has been enacted have no such right, except in so far as such legislation contravenes constitutional provisions. The courts of North Carolina having acquired jurisdiction of the person of the defendant, it is the duty of this court to give effect to the judgments recovered in that state by awarding judgments in favor of the plaintiffs in these actions.

Let the plaintiffs have judgment, with interest, and the costs of these actions. Settle the form of decision on notice.