HENRY P. C. JOHNSTON, Plaintiff, *v.* THE MUTUAL RESERVE
LIFE INSURANCE Co., Defendant.

(City Court of the City of New York, Trial Term, March, 1904.)

Action on judgments recovered against a domestic corporation in the
court of another State — When copies of the foreign record raise
a presumption that jurisdiction of the person was obtained — Ex-
trinsic evidence as to such jurisdiction when admissible — Requi-
sites of such jurisdiction in a State court — Service of process in
the foreign State upon an agent authorized to accept service —
A change in the person designated affects procedure only — When
a designation becomes irrevocable.

Where actions are brought in a court of the State of New York
upon judgments recovered against the defendant, a domestic life
insurance company, in a foreign court of general jurisdiction the
production upon the trial of copies of the judgment records raises
a presumption that the foreign court had jurisdiction of the person
of the defendant, until the contrary appears; and where jurisdic-
tion is impugned by the defendant evidence outside the record is
admissible upon the part of the plaintiffs to sustain its recitals.

In a suit in a State court against a foreign corporation having
no property within the State it is necessary in order to obtain a
personal judgment against the corporation, that it, when service
of process was made upon it, be doing business within the State
and that service, within the State, be made upon an agent of the
corporation duly authorized to accept service.

Although the defendant has withdrawn from the State it must
be deemed to be doing business therein where it subsequently col-
lects premiums and assessments of and pays losses to policy holders
resident there.

Where a statute of a State requires a foreign corporation, in
order to obtain a license to do business therein, to first appoint a
resident general agent and stipulate, by the certificate of appoint-
ment, that so long as there may be any liability in the State upon
the part of the company under any contract entered into in pur-
suance of any law concerning insurance any legal process affecting
the company may be served in its absence upon such general agent
or upon the secretary of state and when so served shall have the
same effect as if served personally on the company in the State,
a change made by a statute of the State substituting its insurance
commissioner as the sole person to be served affects the remedy
or procedure but not the contract, and service upon him, made after
his appointment, in actions brought in the State against the com-

pany by resident policy holders for breach of contract, binds the company personally even though the policies were issued before his appointment.

*Semble,* that the power of attorney appointing him is a condition of the company's right to do business in the State and cannot lawfully be revoked as to the resident policy holders where they, while the power was in force, paid assessments and premiums, as the policy holders may be said to have parted with their money on the faith of the statute making the substitution and the act of the company under it.

TRIAL before the court without a jury.

Addison G. Ricaud and Gilbert E. Roe, for plaintiff.

George Burnham, Jr., and Frank R. Lawrence, for defendant.

SEABURY, J.　By a stipulation entered into between counsel, eleven actions involving substantially the same question of fact and law were heard at the same time before the court without a jury.　These actions are brought by assignees of judgments which were recovered against the defendant in the State of North Carolina.　The defendant is a corporation organized under the laws of the State of New York. The original actions commenced in North Carolina were to recover damages for alleged breach of contracts of insurance entered into between citizens of that State and the defendant.　All of these actions resulted in judgments against the defendant, the validity of which was sustained by the Supreme Court of North Carolina.　Briggs v. Mutual Res. Fund Life Assn., 128 N. C. 5; Moore v. Mutual Res. Fund Life Assn., 129 id. 31.　The judgments now sued upon were recovered in the Superior Court of North Carolina, which is a court of superior and general jurisdiction.　The ground upon which these actions are defended is that the court of North Carolina, in which these judgments were recovered, did not have jurisdiction of the person of the defendant. Proper copies of the judgment records being produced and the court in which they were recovered being one of general jurisdiction, the law presumes that it had jurisdiction of the

person of the defendant, unless something to indicate the contrary appears. Voorhees v. Bank of United States, 10 Pet. 449; Harvey v. Tyler, 2 Wall. 328, 342; Galpin v. Page, 18 id. 350; Bosworth v. Vandewalker, 53 N. Y. 597; Ferguson v. Crawford, 86 id. 609; Applegate v. Lexington & C. Co., Mining Co., 117 U. S. 255. In Bosworth v. Vandewalker, *supra,* Folger, J., said: " The intendment of law, however, is that a Superior Court of general powers had jurisdiction, until the contrary appears. And this intendment is of jurisdiction of the subject-matter not only, but of the person of the defendant also.   *   *   *   The record of the judgment is *prima facie* evidence, and will be held conclusive until clearly and explicitly disproved."

The answer of the defendant impugned the jurisdiction of the North Carolina court, and the defendant subsequently proved its alleged revocation of the authority of the person upon whom service of process was made. Under these circumstances it is perfectly clear that no injury was done to the defendant by permitting the plaintiff to go outside of the record and to offer evidence tending to sustain the recitals therein contained. The jurisdiction of the North Carolina court was the fact to be proved, and in view of the assault which the defendant made upon it, all evidence tending to prove the plaintiff's contention that the court had jurisdiction was competent. The facts proven outside of the record were not by law a requisite part of the judgment-roll, but this fact did not make them incompetent as evidence. Thus Judge Folger, in Bosworth v. Vandewalker, *supra,* said: " There was no error in receiving in evidence papers as to the appointment of a guardian. The sole objection made to them was that they formed no part of the record.   *   *   *   That they were not by law a requisite part of the judgment-roll did not make them incompetent as evidence."

The defendant's objection relates to the order of proof rather than to the competency of the evidence received. This was a matter within the discretion of the trial court and the defendant was in no way prejudiced by taking the proof when it was offered rather than at a later stage of the

trial. In order to acquire jurisdiction over a foreign corporation, for the purpose of obtaining a personal judgment against it, it is necessary that the corporation be doing business within the State at the time service is made and that service of process within the State shall be upon an agent of the corporation duly authorized to accept service. In the case of the Connecticut Mut. Life Ins. Co. v. Spratley, 172 U. S. 602, the court stated the rule in the following language: "In a suit in a state court against a foreign corporation where no property of the corporation is within the State, and the judgment sought is a personal one, it is material to ascertain whether the corporation is doing business within the State, and if so, the service of process must be upon some agent in the State so far representing it that he may properly be held in law its agent to receive such service in its behalf."

Before deciding the question as to whether the North Carolina court had jurisdiction of the person of the defendant it becomes necessary, therefore, to determine the following questions:

*First.* Was the defendant doing business within the State of North Carolina at the time service was made?

*Second.* Was the service of process made within the State upon an agent of the defendant duly authorized to accept service?

I. Service in all the cases involved in all the actions now before the court was made after the 13th day of April, 1899, on the insurance commissioner of North Carolina. On or about the 18th day of May, 1899, the defendant withdrew all of its agents, through whom it had theretofore done business, from the State of North Carolina. But the evidence established that, notwithstanding this withdrawal, the defendant nevertheless transacted business after this date in that State. A review of the evidence upon this point will, I think, establish this fact beyond question. Policies remained in force after the date of the alleged withdrawal, and premiums and assessments upon these policies were paid by persons living in North Carolina by remitting the premiums to the home office of the defendant in New York city.

Where losses occurred the defendant remitted the amount of the loss, as adjusted, to the person entitled to receive it in the State of North Carolina. An agent of the defendant, after the date of the alleged withdrawal, went into the State of North Carolina with authority to adjust a particular loss and actually adjusted it. In one instance the defendant instructed a bank in the State of North Carolina to receive premiums due on a policy and to deliver a check in payment of the amount of the policy. On another occasion it authorized a member of the bar of that State, as its attorney, to adjust a disputed claim, which duty said attorney duly performed. Upon still another occasion the proof shows that the defendant issued a new policy to a policy-holder residing in the State upon the surrender of the old policy. The surrender of the old, and the issue of the new, policy were effected by mail. While it is true that the plaintiff has proved only isolated instances showing the acts enumerated above, it can hardly be doubted that all of these instances establish the fact that the defendant was doing business in the State of North Carolina at the time service was made upon the insurance commissioner. In Mutual Res. F. L. Assn. v. Phelps, 190 U. S. 147, which was a case in many respects similar to the cases now at the bar, the insurance commissioner of the State of Kentucky, on October 10, 1899, canceled the license of this defendant to do business in the State of Kentucky. In that case, in determining what constituted " doing business within the State," the court said: " It was stipulated between the parties that the outstanding policies existing between the association and citizens of Kentucky were continued in force after the action of the insurance commissioner, on October 10, 1899, and that on said policies the association had collected and was collecting dues, premiums and assessments. It was, therefore, doing business within the State (Mutual Life Ins. Co. v. Spratley, 172 U. S. 602)."

II. In determining whether service of process within the State of North Carolina was made upon an agent duly authorized to accept service, it is necessary to review the legislation of that State in reference to insurance corpora-

tions doing business within the limits of its sovereignty, and to ascertain the relations existing between this defendant and the State of North Carolina and those citizens of that State who held policies issued by the defendant. The policies upon which the judgments now in suit were recovered were issued between the 14th day of December, 1882, and the 10th day of September, 1892. As early as 1876 the Legislature of North Carolina enacted a law prohibiting any foreign insurance company from issuing policies, taking risks or transacting business in that State until it should appoint an agent residing in that State, who should act as such until a successor should be duly appointed, upon whom any civil process might be served. The law further provided that service upon such agent should be binding and be personal service upon the company appointing him, and for the filing of a certificate of such appointment with the Secretary of the State. The certificate of appointment was required to " contain a stipulation that in case of the death, absence or removal ·from the state of such agent, the company shall forthwith appoint another in his stead, and, failing to do so, the Secretary of the state shall make such appointment, notifying the company thereof; and if such company withdraw from, or cease to do business in, the state, service upon such agent shall, nevertheless, be binding and be deemed a personal service upon such company, so long as any liability remains outstanding against the company ·in this state."

In 1883, the Secretary of State was authorized to issue licenses to do insurance business, provided that before the issue of any license the applicant therefor should appoint a general agent, who shall be a citizen and resident of the State, and file a certificate of such appointment, which certificate should " contain a stipulation agreeing that so long as there may be any liability on the part of the applicant under any contract entered into in pursuance of any law concerning insurance, any legal process affecting the applicant may be served in his absence upon such general agent, or upon the Secretary of State, and when so served, shall have the same effect as if served personally on such applicant in this State; provided, when such service is made upon the

Secretary of State it shall be his duty to transmit at once a copy of the process to the home office of the company." In 1899, it was enacted that "no foreign insurance company shall be admitted, and authorized to do business until * * * it shall constitute and appoint the insurance commissioner, or his successor, its true and lawful attorney, upon whom all lawful process in any actions or legal proceedings against it may be served, and therein shall agree that any lawful process against it which may be served upon its said attorney shall be of the same force and validity as if served on the company, and the authority thereof shall continue in force, irrevocable, so long as any liability of the company remains outstanding in this Commonwealth." These are the only laws of the State of North Carolina to which it is necessary to refer at this time. The defendant complied with the requirements of these statutes up to the time of its formal withdrawal from the State. All of the policies upon which the judgments now in suit were recovered were issued while the law permitting service to be made on the Secretary of State was in force. On or about the 13th day of April, 1899, pursuant to the act of 1899, the defendant duly executed written authority to James R. Young, the insurance commissioner, or his successor in office, constituting him its true and lawful attorney, "upon whom all lawful process in any action or legal proceeding against it may be served, subject to and in accordance with the provisions of the laws of the State of North Carolina now in force, and such other laws as may hereafter be executed in relation thereto; and said company does hereby expressly agree that any lawful process against it which may be served upon said James R. Young, insurance commissioner, or his successor, shall be of same force and validity as if served on this company, and this authority shall continue in force and irrevocable so long as any liability of said company remains outstanding in said State." In the actions which resulted in the judgments which are the subject of these actions, service was made upon the insurance commissioner designated in this written authority. The defendant now contends that the designation of the insurance commissioner

17

under the act of 1899, appointing him as the person upon whom service could be made in actions brought upon policies issued after his appointment, gave him no authority to receive service in actions brought upon policies issued prior to his appointment. It contends that his appointment had no reference to the past. It is true that prior to the passage of this law other persons were designated under the act of 1876 and the act of 1883 as the persons upon whom process should be served, but that fact is no indication that the State could not prescribe that another official should be designated for this purpose, or that the corporation itself could not designate other agents provided that it did not violate the law in so doing. The agent designated under the act of 1876 was to act in that capacity " until a successor be duly appointed." Under the act of 1883, service was to be made upon the general agent, or upon the Secretary of State. The enactment of these provisions did not mean that the State thereby surrendered the right to devolve this duty upon another official. The obvious purpose of the whole legislation to which reference has been made was to enable its citizens having claims against foreign corporations doing business in that State to litigate those claims in courts of the State where the contracts were made, so that they should not be put to the annoyance and expense incident to being obliged to pursue the corporation to the State of its origin and attempt to enforce their claims in the courts of that State. As was said by Mr. Justice Brewer in the Phelps case, *supra,* such statutes " indicate the purpose of the State that foreign corporations engaging in business within its limits shall submit the controversies growing out of that business to its courts, and not compel a citizen having such a controversy to seek for the purpose of enforcing his claim the State in which the corporation has its home." The act of the Legislature requiring that a different official should be designated as the person upon whom process could be served did not alter or diminish in any respect the rights of the insurance company. To hold that the Legislature intended that, after the act of 1899, those having causes of actions against such companies should serve proc-

ess only upon those upon whom process could have been served at the time the contract was made, if the cause of action had arisen at that time, is to place a construction upon this legislation which is in my judgment wholly unreasonable and in direct violation of legal authority.   The law substituting the insurance commissioner in the place of the Secretary of State as the person upon whom service should be made did not in any way affect the rights of the defendant or the policy-holders who had contracted with it. It merely prescribed a different remedy .or means whereby the same rights which grew out of the contract could be enforced.   Nor was the result of the change a remedy substantially different from that which previously existed.   In designating the insurance commissioner rather than the Secretary of State as the person upon whom process was to be served, the change was merely as to the remedy.   Nor is there any doubt as to the right of the State to alter or prescribe new remedies by which existing rights may be enforced, provided that contract obligations are not impaired. In Railroad Co. v. Hecht, 95 U. S. 168, it was held that a statute which prescribed a mode of serving process upon railroad companies different from that provided for in a charter previously granted to a particular company does not impair the obligations of a contract between said company and the State.   Chief Justice Waite said: " The regulation of the forms of administering justice of the courts is an incident of sovereignty.   *   *   *   The provision is one which evidently belongs to remedies against the corporation, and not to the grant of rights.   As to remedies, it has always been held that the legislative power of change may be exercised when it does not affect injuriously rights which have been secured."   If further authority is needed it is to be found in the luminous statement of the law upon this subject in Oshkosh Water Works Co. v. Oshkosh, 187 U. S. 437, where Mr. Justice Harlan said:   " It is well settled that while, in a general sense, the laws in force at the time a contract is made enter into its obligation, parties have no vested right in the particular remedies or modes of procedure then existing.   It is true the Legislature may

not withdraw all remedies, and thus, in effect, destroy the contract; nor may it impose such new restrictions or conditions as would materially delay or embarrass the enforcement of rights under the contract according to the usual course of justice as established when the contract was made. Neither could be done without impairing the obligation of the contract. But it is equally well settled that the Legislature may modify or change existing remedies or prescribe new modes of procedure, without impairing the obligation of contracts, provided a substantial or efficacious remedy remains or is given, by means of which a party can enforce his rights under the contract." Judge Cooley, in his Const. Lim. (6th ed.), p. 347, says that "laws changing remedies for the enforcement of legal contracts, or abolishing one remedy where two or more existed, may be perfectly valid, even though the new or remaining remedy be less convenient than that which was abolished or less prompt and speedy." See also Swan v. Mut. Res. Fund Life Assn., 155 N. Y. 9. In ascertaining whether the Legislature of North Carolina, by the act of 1899, intended that all process should be served upon the insurance commissioner, without regard to the time when the contract of insurance was entered into, the decisions of the courts of that State should certainly be accorded great weight. Thus Mr. Justice Brewer, in the Phelps case, says: "Such decision of the highest court of Kentucky, construing one of its own statutes, if not controlling upon this court is very persuasive, and it certainly is controlling, unless it be held to be merely an interpretation of a contract created by the statute." And in Hunt v. Hunt, 72 N. Y. 217, Judge Folger says: "The decisions of the tribunals of a State as to the true construction of the laws of their own sovereignty are binding upon the Federal courts. * * * and why not on the judiciary of other States in all matters within the jurisdiction of the tribunals first named?" The courts of North Carolina, as has already been pointed out, have held that service upon the insurance commissioner in the cases which resulted in the judgments now before the court was valid. On May 17, 1899, five weeks after it had duly executed its written

authority designating the insurance commissioner as the person upon whom service could be made, the defendant, by resolutions of its directors, declared the appointment of the insurance commissioner as its attorney revoked, and subsequently filed these resolutions in the insurance department of North Carolina. The defendant now insists that this attempted revocation of the authority of the insurance commissioner terminated his authority to receive service of process in actions subsequently brought. To sustain this contention it invokes the principle that a power of attorney, even though by its terms irrevocable, is, if not coupled with an interest, revocable at the will of the principal. This principle is elementary and its soundness undisputed. The question to be determined is as to the application of this principle to this case. The written authority designating the insurance commissioner, which the defendant made pursuant to the act of 1899, was, in my judgment, more than a mere naked power of attorney. The people of the State of North Carolina had the right to exclude foreign corporations from the State altogether, if they saw fit so to do, or to prescribe the terms and conditions upon which such corporations should be permitted to transact business in that State. In Anglo-Am. Prov. Co. v. Davis Prov. Co., 169 N. Y. 506, 510, Judge Gray said: "As to the power of the state to prescribe, arbitrarily, or from policy, limitations and conditions upon the exercise by foreign corporations of corporate rights, I suppose there to be no doubt; whether they be upon the right to do business here, or upon the right to sue in our courts." The cases showing the right of the State to grant or refuse permission to a foreign corporation of this kind to do business within its limits are collected and discussed in Hooper v. California, 155 U. S. 648, 652. In that case Mr. Justice White said: "The principle that the right of a foreign corporation to engage in business within a State other than that of its creation, depends solely upon the will of such other State, has been long settled, and many phases of its application have been illustrated by the decisions of this court." The act of 1883, providing that service should be made upon the Secretary

of State, was repealed, and the act of 1899 designated the insurance commissioner for this purpose. This act also prescribed, as a condition to be complied with before any insurance company should be admitted to do business in that State, that it should execute an instrument constituting and appointing the insurance commissioner, or his successor, its true and lawful attorney, upon whom all process in any action or legal proceeding against it might be served, which instrument stipulated that this power should continue so long as any liability of the company remained outstanding in that State. Could the defendant, after having gained admission to the State or permission to continue to do its business in that State, because it signified its consent to these conditions, and while its liabilities to citizens of that State were still outstanding, revoke and repudiate the consent it had solemnly given as the condition of its right to exist in that State? I think not. The substitution of the insurance commissioner in the place of the Secretary of State in no way changed or altered the contract rights existing between the defendant and its policy-holders. The contracts were the same, although the person upon whom service was to be made of process in the event of a cause of action arising by reason of a breach of these contracts was different. The designation of the insurance commissioner was more than a mere power of attorney, it was the performance of a condition prescribed by the State, upon which alone the defendant was permitted to exist in that State. Having complied with this condition, entered the State and received the benefits resulting from the transaction of business with its citizens, it cannot now be heard to repudiate its own agent and revoke his authority. In the Phelps case, *supra*, which arose under the statutes of Kentucky, the Supreme Court of the United States held that the service of a summons upon the insurance commissioner in an action against an insurance company doing business in the State was sufficient to bring the company into court, even when its license had been canceled by the commissioner, where, after such cancellation, it continued to collect premiums and assessments on policies remaining in

force. See also Franklin Ins. Co. v. Gillett, 54 Md. 212; Germania Ins. Co. v. Ashby, 23 Ky. Law Rep. 1564. During the brief period that the defendant continued to do business in the State, after it executed the authority to the insurance commissioner, the holders of the policies which were subsequently reduced to judgments, which are now in suit, paid premiums and assessments to the defendant. They knew that the act of 1883 designating the Secretary of State had been repealed, and that the insurance commissioner had been designated as the person upon whom service should be made. The authority of the insurance commissioner had been duly executed by the defendant and filed in the office of that official. Knowing these facts (which the law presumes they did), they paid premiums upon these policies, which the defendant received. These premiums may fairly be said to have been parted with upon the faith of the law of 1899, and the act of the defendant, which was done pursuant thereto. Even if it could be held that prior to the payment of these premiums the policy-holders had no interest in the act of 1899, or in the designation of an attorney under it, I think that they thereby acquired such an interest as to prevent the defendant, as to them at least, from canceling and revoking the authority of the insurance commissioner. In the last analysis the argument of the defendant will be found to rest, so far as legal authority is concerned, upon the case of Woodward v. Mutual Res. Life Ins. Co., 84 App. Div. 324. That was a case very similar, but I think still distinguishable from the cases now before the court. In that case, as in these cases, the jurisdiction of the North Carolina court depended upon service made upon the insurance commissioner. It was there held that as the policy of insurance which resulted in the judgment sued upon in that case had been issued before the power of attorney given to the insurance commissioner was executed, and as the plaintiff in that case had parted with nothing upon the faith of the act of 1899, and had acquired no interest in the power of attorney, that his rights were not affected by the revocation of such power. The Woodward case is, however, in my judgment, clearly distinguish-

able from the cases at bar in several important respects. That case was determined upon an agreed statement of facts submitted pursuant to section 1279 of the Code of Civil Procedure. The facts agreed upon in that case differ from the facts proven in these cases in that in the Woodward case it was agreed that the company had not "done or transacted any business in said state" since the 17th day of May, 1899, when the company declared that it withdrew from the State. Although this point is not commented upon in the opinion in that case it may well have been considered by the court. In the cases now before the court premiums and assessments were paid to the company, during the life of the power of attorney to the insurance commissioner, while in the Woodward case there was no proof of such payments. Indeed, the decision in the Woodward case seems to be based upon the absence of evidence of this character. In that case the court said: "There is no evidence that the plaintiff parted with anything because of the existence of this power of attorney, or that he had in any way acquired any valuable interest in its maintenance." It was because of the absence of this evidence that the court held the power to be revocable by the company. While I am satisfied that the Woodward case is fairly distinguishable from the cases at bar, it is, nevertheless, equally clear that that decision is in conflict with the decision of the United States Supreme Court in the Phelps case. The Phelps case was decided after the argument and decision in the Woodward case, and was not called to the attention of the court. Even if the Woodward case was not distinguishable from the cases now before the court, the obvious conflict between that decision and the decision in the Phelps case makes it the duty of this court, in view of the Federal question involved, to follow the rule laid down in the Phelps case. This duty is nowhere more clearly pointed out than in Sibley v. Sibley, 76 App. Div. 132, where the Appellate Division of this department, after pointing out the conflict between a decision of our Court of Appeals and a decision of the United States Supreme Court, says: "There is no room for distinction; and it

being a Federal question, it is our duty to follow the Supreme Court of the United States (Duncomb v. N. Y. H. & N. R. R., 84 N. Y. 190; Hintermister v. First Nat. Bank, 64 N. Y. 212)." The basis of these actions now before the court is a provision of the Federal Constitution that full faith and credit shall be given in each State to the judicial proceedings of every other State. U. S. Const., art. IV, § 1. If the North Carolina court obtained jurisdiction of the person of the defendant, its judgment could be enforced here, and property taken under the judgments recovered in this State would not be taken without due process of law. As was said by the court in Connecticut Mut. Life Ins. Co. v. Spratley, 172 U. S. 602: " The Federal question with which we are now concerned is whether the court obtained jurisdiction to render judgment in the case against the company so that to enforce it would not be taking the property of the company without due process of law." Under the decision in the Phelps case I think it clear that the defendant had no right to revoke the appointment of the insurance commissioner, and that being so, it follows that the courts of North Carolina acquired jurisdiction of the person of the defendant, and the judgments entered in that State established the debts of the defendant. One other objection of the defendant remains for consideration. The defendant insists that even if it had not revoked the authority of the insurance commissioner that authority was revoked absolutely by the State of North Carolina as an effect of the Craig Act. The so-called Craig Act went into effect June 1, 1899. It prohibited every insurance company from transacting business in that State, under certain penalties therein prescribed, unless it should first become a domestic corporation of the State of North Carolina. The wisdom or lack of wisdom shown by this legislation is not a matter for consideration by the courts of this State. The Craig Act related to the future, prescribing certain conditions upon which foreign insurance corporations would be permitted to do business in that State. The act had no reference to liabilities which resulted from business transacted in the past. It offered to such foreign corporations permission to do business in

the State, which they were perfectly free to accept or reject as they saw fit.  It certainly was not intended by this act to relieve such corporations from the liabilities which they had already incurred to citizens of that State.  It was entirely within the power of the State of North Carolina to prescribe such terms if it saw fit to do so.  The courts of this State have no right to arrogate to themselves the function of determining as to the wisdom or justice of legislation enacted in another State.  Even the courts of the State where such legislation has been enacted have no such right except in so far as such legislation contravenes constitutional provisions.  The courts of North Carolina having acquired jurisdiction of the person of the defendant, it is the duty of this court to give effect to the judgments recovered in that State by awarding judgments in favor of the plaintiffs in these actions.  Let the plaintiffs have judgment, with interest, and the costs of these actions.  Settle the form of decision on notice.

Judgments for plaintiffs, with interest and costs.