## STURGIS v. CRESCENT JUTE MANUF'G CO.

### (Supreme Court, General Term, First Department. June 6, 1890.)

FOREIGN CORPORATIONS—SERVICE OF PROCESS.

Prior to the service of summons upon one B., as officer or managing agent of defendant, a foreign corporation, under Code Civil Proc. N. Y. § 432, B. had resigned his position of president of the corporation, and he made affidavit that subsequently he sustained no relation to defendant except as a member of a firm which was under contract to sell defendant's goods and to advance moneys to defendant. On the day of the service of summons B. gave directions as to the disposition of certain property consigned to defendant, but with such directions B. communicated the fact of his resignation. *Held,* that the service could not be sustained.

Appeal from special term, New York county.

Action by Appleton Sturgis against the Crescent Jute Manufacturing Company. From an order denying a motion to set aside the service of summons defendant appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Wingate & Cullen,* for appellant. *Butler, Stillman & Hubbard, (Adrian H. Joline* and *Henry H. Whitman,* of counsel,) for respondent.

DANIELS, J. The summons was served by delivering it to William J. Behan. He had been the president of the defendant, which is a corporation existing in the state of Louisiana. It had designated no person within this state upon whom the summons might be served, but it was made to appear that the defendant had property within this state, and the service was made upon Behan, as an officer, or managing agent, of the corporation within this state. The service of the summons was made on the 10th of February, 1890, and the person upon whom it was served stated in his affidavit that he had been president of the defendant prior to the 18th of January of this year, but on that day resigned his office, and on the following day his resignation was accepted by the board of directors, and on the next succeeding day an annual election was held for directors for the ensuing year, and his name was omitted from the new board. These statements were also sustained by the affidavit of the secretary of the defendant, who swore to the same state of facts. And Mr. Behan further stated in his affidavit that his only relation with the defendant was that of a member of a firm, who were commission merchants, doing business in the city of New Orleans, and that the firm had a written contract with the defendant, agreeing to advance money to it for the purposes necessary for conducting its business, and to market the bagging and other products of the defendant upon certain terms as to credit, for a commission on the gross sums for their services; that their employment was as commission merchants, and they were in no sense agents of the company. And this statement was also in like manner sustained by the affidavit of the secretary. To meet and overcome the effect of this evidence it was shown that a cargo of jute butts had arrived in this state on the 10th of February, 1890, for the defendant, and that after its arrival Gustavus Tuckerman, whose affidavit was produced upon the hearing, called upon Mr. Behan at the Victoria Hotel, and mentioned to him the arrival of the vessel, and asked him whether the butts should be shipped to New Orleans or stored here in bond, and he replied that they should be stored. He stated further that he had previously been told by Mr. Behan that he had resigned as president, but that he complied with the instructions given to him, because he thought that having previously been president of the company, and his brother at that time being president, or about to become president, the company would ratify or consent to any instructions he might give to the affiant; and in accordance with what took place the cargo was stored under the instructions of this person. But this affidavit in no way conflicts with the statements before referred to, that the only relation which Behan sustained to the defendant was that of a mem-

ber of this firm, which had obligated itself to loan money to the defendant and to sell its products upon commission. It did not, nor did any other proof presented to the court, prove as a matter of fact that Behan was engaged in the service of the company, or authorized to interfere in its affairs, as its managing agent. He was not its officer in any sense, nor did he sustain any other relation whatever to the company than that of a member of this firm, which had undertaken to loan it money and to dispose of the defendant's manufactured articles for a commission. In *Tuchband* v. *Railroad Co.*, 115 N.Y. 437, 22 N. E. Rep. 360, the subdivision of section 432 of the Code of Civil Procedure authorizing the service of a summons on a managing agent of a foreign corporation, was considered and construed. But by no construction of the language contained in that case was there sufficient shown here to bring this case within its control. There the person who was served was in charge of the affairs of the corporation in this state, controlling its place of business, while here this corporation does not appear to have had any place of business within this state. Neither does it appear to have conferred any authority upon Mr. Behan to represent it, or interfere with its affairs, otherwise than in the sale of its articles for a commission. The suspicion entertained by the plaintiff, that Mr. Behan had gone through the form of resigning his office to evade the service of process upon him as president of the company, does not aid the case; for if that was the object which induced his resignation, inasmuch as he did actually resign, and the resignation was accepted by the company, he could not afterwards be served with the summons against the company as its officer. To justify this service the fact must exist that the person on whom it is made is either an officer or managing agent of the corporation. In this case neither fact has been proved, but the fact proved is that he was not an officer of the company, and was not its managing agent. The order should be reversed, with $10 costs and the disbursements of the appeal. All concur.