## Sturges & Burn Manufacturing Company, Appellant, v. Unit Construction Company, Appellee.

### Gen. No. 21,966.

1. ARBITRATION AND AWARD—*what is character of notice of final judgment.* The "notice" of final judgment on an award of arbitrators provided for by Hurd's Rev. St. ch. 10, sec. 7 (J. & A. ¶ 462) is not to be construed as synonymous with "process" but as equivalent to knowledge or information.

2. ARBITRATION AND AWARD—*when court has jurisdiction upon filing of award.* Persons who agree to arbitrate their differences in the method provided by Hurd's Rev. St. ch. 10, sec. 16 (J. & A. ¶ 471) and in their agreement provide that the award made pursuant thereto "may be filed in the Circuit Court of Cook county, and judgment entered thereon," by such agreement definitely subject themselves to the jurisdiction of that court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. ARBITRATION AND AWARD—*what is effect of service of notice in another State on jurisdiction of court.* Under an agreement entered into to arbitrate differences in the manner provided by Hurd's Rev. St. ch. 10, sec. 16 (J. & A. ¶ 471), which agreement provides that any award thereunder may be filed in the Circuit Court of Cook county and judgment entered thereon, after an award has been made and the notice provided by section 7 (J. & A. ¶ 462) of the statute has been given and the award has been filed in the Circuit Court, that court obtains jurisdiction, even though the notice was served in another State.

4. ARBITRATION AND AWARD—*when party may not claim that notice is not due process of law.* One who signs an arbitration agreement under which he voluntarily and with knowledge waives everything beyond mere notice or information cannot claim that notice thereunder served outside of the State is not due process of law.

5. CORPORATIONS, § 709*—*when foreign corporation is doing business within State.* Even though a foreign corporation has filed a renunciation of its license to do business in the State and has revoked its statutory license, it cannot be held entirely to have ceased doing "business" where there remains pending a proceeding to enforce an award against it rendered under a voluntary arbitration agreement entered into by it in the State while it still retained its license to do business, and service of notice provided for the agreement and the statute under which it was entered into may be made upon its statutory agent.

Appeal from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Reversed and remanded. Opinion filed June 27, 1917. Rehearing denied July 13, 1917.

BULKLEY, MORE & TALLMADGE, for appellant.

BENTLEY, BURLING & SWAN, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court. .

In order to settle a controversy which had arisen between appellant and appellee, in regard to certain obligations arising by reason of a building contract, appellant and appellee on March 6, 1913, entered into

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

a written agreement for an arbitration of their differences, which agreement provided, *inter alia,* for a board of arbitration, "under section 16, chapter 10, Revised Statutes of Illinois." (J. & A. ¶ 471.) It was provided, also, in the arbitration agreement that the parties thereto "may be represented before the board of arbitration by counsel" and that the award, "when made, may be filed in the Circuit Court of Cook county, State of Illinois, and judgment entered thereon, pursuant to the statute in such case made and provided, and that such award may not .be questioned or set aside on the ground that the arbitrators, in making the award, have erred in either matters of law or fact."

On November 5, 1914, the arbitrators, three in number, determined that appellant was entitled to damages in the sum of $17,150, less $10,922.82, which should be deducted as unpaid balance of purchase price· and extras.

On December 17, 1914, appellant filed in the office of the clerk of the Circuit Court of Cook county, the arbitration agreement, the award of the arbitrators and a written motion for a judgment for $6,227.18 based on the award.

On December 23rd, appellant filed a written notice and proof of service made on December 17, 1914, entitled "To Unit Construction Company and Bentley, Burling & Swan, its attorneys," announcing that on December 23, 1914, it would appear before the Honorable John P. McGoorty, one of the judges of said Circuit Court of Cook county, and call up for hearing and determination the motion, and ask the court to enter judgment on the award against appellee.

Also, on December 23, 1914, the attorneys for appellant filed a notice and proof of service, entitled "To Unit Construction Company and Bentley, Burling & Swan, its attorneys," which recited that on December 23, 1914, they would call up for hearing and determination a motion to enter judgment on said award. It is

recited in that notice that it was served on December 18, 1914, by delivering a copy to "W. W. Boyd, Jr., the vice president of said Unit Construction Company, at the office of said Unit Construction Company, 801 Liggett building, in the City of St. Louis, State of Missouri," on December 18, 1914.

The same day, December 23, 1914, the appellee, by "Bentley, Burling & Swan, its attorneys," entered a special appearance, in said cause, in the Circuit Court, objecting to the jurisdiction of the court (1) that appellee is a Delaware corporation; (2) that no process of the Circuit Court had been served on appellee in the State of Illinois; (3) that the notice served upon appellee in St. Louis, Missouri, was ineffectual, and that therefore the Circuit Court is without jurisdiction.

On January 4, 1915, there was filed in the Circuit Court another notice (and proof of service) stating that appellant would ask for judgment on January 11, 1915. That notice was addressed "To Unit Construction Company and Bentley, Burling & Swan, its attorneys," and the affidavit of service states that it was served "upon the said Unit Construction Company, by delivering to Nathaniel F. Sawyer, the authorized agent of said Unit Construction Company, in the State of Illinois, a true copy thereof, on the 4th day of January, A. D. 1915," and thereafter on January 29, 1915, appellee, by Bentley, Burling & Swan, its attorneys, entered another special appearance, claiming that the notice served on appellee, through Sawyer as agent, did not give the Circuit Court jurisdiction.

The trial judge on April 8, 1915, denied appellant's motion for judgment, and entered judgment for appellee for costs of suit.

The evidence offered by the appellee, in support of its objections, shows that an affidavit of withdrawal of appellee, and revocation of the authority of its Illinois representative for service of process, was filed on December 18, 1914 with the Secretary of State. That

78    APPELLATE COURTS OF ILLINOIS.

Sturges & Burn Mfg. Co. v. Unit Construction Co., 207 Ill. App. 74.

affidavit of withdrawal states, among other things, that appellee discontinued business in Illinois on October 1, 1914. The appellee offered in evidence also two affidavits, the first by Sawyer, to the effect that he was not employed by appellee since October, 1913, and that he was not on January 4, 1915, the agent or representative of appellee; the second, by W. W. Boyd, Jr., to the effect that appellee had not solicited work in Illinois since May 21, 1914, and that the agency of Sawyer was terminated on or about September 30, 1913.

The sole question involved in this appeal is whether the notice given by appellant was a compliance with the requirements of section 7 of the Act (J. & A. ¶ 462). Section 7 provides that "the party filing such award may, at the next term after such filing, by giving four days' notice of his intention to the opposite party, and if no legal exceptions are taken to such award or other proceeding, have final judgment thereon, as on the verdict of a jury, for the sum specified in said award to be due, together with the costs of arbitration and of the court; and execution may issue therefor as in other cases."

Three different notices were given in an endeavor to comply with the statute. The first was a notice addressed "To Unit Construction Company and Bentley, Burling & Swan, its attorneys," and was served by delivering a copy to Thomas W. Swan, on December 17, 1914. It is claimed by Bentley, Burling & Swan that although they did represent appellee in the course of part of the arbitration proceedings, they were not on December 17, 1914, attorneys for appellee, and that they are now appearing only specially to contest notice and judgment.

The second notice was served upon W. W. Boyd, Jr., the vice president of appellee, at the office of the company, in St. Louis, Missouri, on December 18, 1914. It is claimed by the appellee that that notice, being served outside the State of Illinois, was insufficient.

The third notice was served upon Sawyer, "the authorized agent" of the appellee, and served within the State of Illinois, on January 4, 1915. It is claimed by appellee that Sawyer had not been in the employ of appellee since September 30, 1913; that the agency of Sawyer was revoked on December 18, 1914, the day after notice was served upon Bentley, Burling & Swan; that the revocation at that significant time was not a ruse or subterfuge, but merely making the records of the Secretary of State accord with the facts.

As to the notice served on the vice president of appellee, on December 18, 1914, at St. Louis, Missouri:

It is necessary, of course, at the outset, to determine just what is meant in the statute by the word "notice." Does it mean knowledge or information created by the voluntary act of the appellant, whether by a technical legal court process, or by mere acts *in pais*. If it means the former, then "notice" is synonymous with "process," if the latter, it is not. There does not seem to be anything affirmative in the arbitration statute that suggests the issuance of a court process; and taking the word in its context, in a statute that came into being, we may assume, to avoid some of the vices of a conventional lawsuit, it does not appear reasonable to interpret the word "notice," which to the lay mind means knowledge however obtained, to mean something else, something known only to the legal profession, and called by them, in the nomenclature of the law, a process.

If then "notice," as the word is used in the statute in question, means information and not a court process, was the notice served in St. Louis, Missouri, sufficient? It is claimed by appellee that a judgment rendered upon such notice served in Missouri would be void. There are two ways by which a court may obtain jurisdiction of the party: First, by service of process within the jurisdiction; and second, by the act of the party in voluntarily submitting himself to the

jurisdiction of the court. A typical case, included within the last method, is where a party causes his appearance to be entered, or authorizes it to be done, as in the case of a confession on a promissory note. In the present case the defendant, by signing the agreement that the award should be filed in the Circuit Court and judgment entered thereupon, definitely subjected itself to the jurisdiction of the Circuit Court and has authorized judgment to be entered against it, as certainly as if it had signed a power of attorney authorizing a confession of judgment. Indeed the case is exactly similar in its essence to one where such a power of attorney is given. That principle was recognized by this Court in the case of *Seaton v. Kendall*, 61 Ill. App. 291, in which Mr. Justice Waterman, speaking for the court, said in passing upon an agreement not entirely dissimilar to the one here: "The agreement is really analogous to a power of attorney authorizing a confession of judgment." We are therefore of the opinion that the notice served upon appellee in St. Louis, Missouri, in accordance with the written contract of the parties and the arbitration statute, was sufficient, and that upon the filing of the award the court obtained jurisdiction.

As to the claim that notice served outside of the State is not due process of law, we do not think it tenable, as the appellant in signing the arbitration agreement voluntarily and with knowledge waived everything beyond mere notice.

. As to the notice served upon Sawyer, "the authorized agent" of the appellee, and served within the State of Illinois, January 4, 1915:

Of course, Sawyer was not on January 4, 1915, in the employment of appellee, and in fact had not been since October, 1913. The appellee in July, 1910, qualified as a foreign corporation in the State of Illinois, and opened an office in Chicago and appointed Sawyer its statutory agent. The appellee had not solicited or

actually performed any construction work in Chicago, or elsewhere in Illinois, since May 21, 1914. The renunciation of its license to do. business in the State of Illinois and the revocation of the authority of the statutory agent occurred on December 18, 1914.

It is claimed, however, by the appellant "that a corporation that has once complied with the foreign corporation statute is estopped from revoking the appointment of its statutory agent, and withdrawing from the State so long as any controversy exists between it and Illinois citizens, growing out of business transactions entered into in Illinois while the corporation was authorized to do business here."

The statute uses the words "shall constantly keep on file * * * the name and address of some person." (J. & A. ¶ 2528.) It contains no express provision as to any future time when it may be the foreign corporation has ceased entirely all business within the State. Of course, it is reasonable, in view of the lack of affirmative statement in the statute itself, as to whether the agent's name may be withdrawn when the corporation has ceased entirely to do business in the State, to conclude that, as the presence of an agent at such a time would be entirely superfluous, as there could be no need of any one to be served, the name might then be withdrawn. But in the instant case, was not the appellee doing business in the State of Illinois on January 4, 1915? The arbitration agreement was entered into on March 6, 1913, and on November 5, 1914, the arbitrators made their award and signified that appellant was entitled to recover. Of course, the matter of the arbitration, being the result of an unexecuted, unfinished contract between appellant and appellee, was the "business" of both parties, each was interested in its side and in its success, and probably would be affected as a matter of profit or loss, according to the ultimate determination of the arbitration. A voluntary arbitration involving profit or loss to the

extent of thousands of dollars is as much a matter of "business" as far as the appellee is concerned as any matter of building construction. So on December 18, 1914, the date when appellee undertook to withdraw the name of Sawyer as its agent, it cannot be said, reasonably, that it was not doing business in this State.

In the case of *Forrest v. Pittsburgh Bridge Co.*, 116 Fed. 357, Forrest brought suit against the Pittsburgh Bridge Company and served one Church, a former agent of the corporation, on April 22, 1901, although the company had not only gone out of business in the State of Illinois, but at a prior date, May 12, 1900, ceased doing business anywhere, and was from that time on settling up its affairs. Judge Grosscup's opinion in that case is undoubtedly to the effect that a foreign corporation, "not doing business in the State, cannot be held to be found in the State." That case, however, is not in point, where as here the corporation is still doing business in the foreign State. Of course, it looks as though after service on Bentley, Burling and Swan, appellee had made a deliberate effort to escape a threatened judgment, and so conduct itself that no notice could be served and no judgment be entered, and the normal result of the private contract of arbitration entirely thwarted and rendered nugatory. It may be assumed that if the award had been favorable to appellee, the latter would have considered the result as taking place in the State of Illinois and as part of and belonging to its business. The contract of arbitration of March 6, 1913, was the outgrowth of and provided for in the building contract of October 30, 1911. It is difficult to escape the conclusion that the arbitration proceedings and the award, arising as they do by reason of the terms of the original building contract, was a matter of business. If "a man does business when he contracts obligations," according to the dictum of Mr. Justice Brown in

*Knights Templars' & Masons' Life Indemnity Co. v. Jarman,* 187 U. S. 197, it may be said, also, that the acts of the parties in fulfilment of their contractual obligations constitute business at least as meant and intended by the statute in question. We are therefore of the opinion that the appellee on January 4, 1915, at the time when Sawyer was served with notice, had not entirely ceased doing business in the State of Illinois, and that such service was sufficient. *Brown-Ketcham Iron Works v. Geo. B. Swift Co.,* 53 Ind. App. 630, 100 N. E. 584, at 590. The judgment of the trial court therefore is reversed and the cause remanded.

*Reversed and remanded.*